**ORAL ARGUMENT NOT SCHEDULED**

No. 14-7190

# In the United States Court of Appeals
## for the District of Columbia

SANDRA MARSHALL,
*Plaintiff-Appellant*

v.

HONEYWELL TECHNOLOGY SYSTEMS INC; L-3 COMMUNICATIONS
GOVERNMENT SERVICES INC., ALSO KNOWN AS EER SYSTEMS INC.;
SGT, INC.,
*Defendants-Appellees*

**On Appeal from the United States District Court
for the District of Columbia**

**BRIEF FOR PLAINTIFF-APPELLANT**

JOANN PATRICIA MYLES
LAW OFFICE OF JOANN P. MYLES
P.O. Box 6021
Largo, MD 20792
301-773-9652
joamyl@aol.com

*Counsel for Plaintiff-Appellant*

## <u>CERTIFICATE OF PARTIES, RULINGS UNDER REVIEW, AND<br>RELATED CASES</u>

Pursuant to Circuit Rules 26.1 and 28(a) (1), undersigned Counsel

for Appellant hereby provides the following information:

## <u>PARTIES</u>

The following are all parties who appeared before the district court:

Sandra Marshall

Sandra Marshall:     Sandra Marshall is an individual and citizen of the United

States.

Honeywell Technology Solutions, Inc. ("HTSI")

Honeywell Technology Solutions, Inc.: Honeywell Technology Solutions, Inc.'s

parent corporation is Honeywell International, Inc., a publicly traded corporation

with no parent corporation. State Street Corporation owns more than 10% of

Honeywell International, Inc.'s Stock (stock which is owned by State Street

Corporation and its direct or indirect subsidiaries in their various fiduciary and

other capacities).  HTSI is a professional, technical and logistics services

organization providing an array of services and customized solutions for defense

agencies, government agencies and corporations.

L-3 Communications Government Services, Inc. Also known as EER Systems Inc.

andL-L-3 Services, Inc., Global and Security Engineering Services, formally

known as L-3 Communications Government Services, Inc.  and presently known as

Engility Corporation.

Engility Corporation:   L-3 Services, Inc., Global and Security Engineering Services formally known as L-3 Communications Government Services, Inc. On July 17, 2012, L-3 Communications divested Engility Holdings Inc., in a spin transformation, establishing Engility Holdings, Inc. ("Holdings").  L-3 Services Inc. contributed to Holdings and renamed Engility Corporation.  Engility Corporation is in the business of providing services to the United States Government.

SGT, Inc.

SGT, Inc.:   SGT, Inc. is a corporation. It has no parent companies or publicly-held entities that hold 10% or more of SGT, Inc. stock.  SGT is a federal government contractor providing engineering, information technology, science and program management support to a variety of government agencies.

## **RULINGS UNDER REVIEW**

The ruling under review in this case is United States District Court Judge Royce C. Lamberth's November 10, 2014, Order and Memorandum granting Appellees' motions for summary judgment and dismissing Appellant's Amended Complaint with prejudice in case number 05cv02502.

## **RELATED CASES**

This case on review has not previously been before this Court or any other court. Appellant is unaware of any other related cases currently pending in the Court or in any other Court.

# TABLE OF CONTENTS

CERTIFICATE OF PARTIES, RULINGS UNDR REVIEW, AND RELATED CASES ................................................................................. i

TABLE OF AUTHORITIES ........................................................... vi

GLOSSARY OF ABBREVIATIONS ............................................... ix

JURISDICTIONAL STATEMENT .................................................. 1

STATEMENT OF ISSUES ............................................................. 1

STATUTES .................................................................................. 2

STATEMENT OF CASE ................................................................ 2

A.    Factual Background ........................................................... 2

SUMMARY OF ARGUMENT ...................................................... 10

ARGUMENT ............................................................................. 16

A.    STANDARD OF REVIEW ................................................. 16

      1.    Summary Judgment ............................................... 16

      2.    Judicial Estoppel .................................................... 17

B.    STANDING ..................................................................... 19

C.    MARSHALL PRESENTED LEGALLY SUFFICIENT EVIDENCE THAT REQUIRED THE DISTRICT COURT TO DENY APPELLEES RENEWED MOTIONS FOR SUMMARY JUDGMENT ..................................................................... 19

D.    DISTRICT COURT DID NOT APPLY THE CORRECT TEST AND
       STANDARD FOR JUDICIAL ESTOPPEL. IT CREATED A
       STANDARD THAT IS IMPOSSIBLE TO OVERCOME WHEN
       BANKRUPTCY OMISSIONS ARE DUE TO INADVERTENCE,
       MISTAKE AND NO INTENT TO CONCEAL .......................................... 23

E.    MARSHALL MADE A CHOICE NOT TO EXEMPT
       HER DISCRIMINATION CASE PROCEEDS FROM
       HER CREDITORS ..................................................................................... 29

CONCLUSION ................................................................................................. 42

CERTIFICATE OF COMPLIANCE ..................................................................... 43

CERTIFICATE OF SERVICE ............................................................................. 44

# TABLE OF AUTHORITIES

## Cases

*Adickes v. Kress Co.*,
398 U.S. 144 (1970) ........................................... 16

*Ah Quinn v. Cnty. Of Kauai Dep't of Transp.*,
733 F.3d 267 (9th Cir. 2013) ............ 11, 13, 14, 19, 22, 23, 24, 28, 30, 31, 32, 33

*Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*,
374 F.3d 23 (1st Cir.2004) ........................................... 17, 18

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................... 17

*Barger v. City of Cartersville*,
348 F.3d 1297 (11th Cir. 2003) ........................................... 26, 27

*Breen v. Dep't of Transp.*,
282 F.3d 839 (D.C.Cir.2002) ........................................... 16

*Burnes v. Pemco Aeroplex Inc.*,
291 F.3d 1282 (11th Cir. 2002) ........................................... 15, 26, 32

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................... 17

*Data Gen. Corp. v. Johnson*,
78 F.3d 1556 (Fed.Cir.1996) ........................................... 18

*Eubanks v. CBSK Fin. Group*,
385 F.3d 894 (6th Cir.2004) ........................................... 18, 19, 24, 25

*Farris v. Seabrook*,
677 F.3d 858 (9th Cir. 2012) ........................................... 18

*Freedman v. MCI Telecomms. Corp.*,
255 F.3d 840 (D.C. Cir. 2001) ........................................... 17

*Germano v. Int'l Profit Ass'n*,
  544 F.3d 798 (7th Cir. 2008) ................................................................25

*Haynes v. Williams*,
  392 F.3d 478 (D.C.Cir.2004).............................................................16

*InterGen N.V. Grina*,
  344 F.3d 134 (1st Cir. 2003) .............................................................24

*John S. Clark Co. v. Farggert & Frieden, P.C.*,
  65 F.3d 26 (4th Cir. 1993) ........................................................... 39, 41

*Kaba v. Stepp*,
  458 F.3d 678 (7th Cir. 2006) ............................................................20

*Mathews v. Potter*,
  316 Fed Appx. 518 (7th Cir. 2009) ............................................. 24, 25

*McNemar v. Disney Store, Inc.*,
  91 F.3d 610 (3d Cir.1996) .......................................................... 17, 18

*Moses v. Howard Univ. Hosp.*,
  606 F.3d 789 (D.C. Cir. 2010)......................................... 11, 15, 30, 34

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ........ 10, 11, 13, 15, 17, 18, 21, 22, 23, 30, 32, 33, 34, 38, 39

*Russell v. Rolfs*,
  893 F.2d 1033 (9th Cir.1990) ..................................................... 17, 18, 22

*\*Ryan Operations G. P. Santiam-Midwest Lumber Co.*,
  81 F.3d 355 (3d Cir. 1996) ........................................................ 11, 31

*Stallings v. Hussmann Corp.*,
  447 F.3d 1041 (8th Cir.2006) ..................................................... 17, 18

*Talavera v. Sch. Bd.*,
  129 F.3d 1214 (11th Cir.1997) .................................................... 17, 18

*U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.*,
   722 F. Supp. 2d 20 (D.D.C. 2010)........................................................39

*United States v. Garcia*,
   37 F.3d 1359 (9th Cir.1994) ..............................................................18

*United States v. Hook*,
   195 F.3d 299 (7th Cir.1999) ......................................................... 18, 19

*Washington Post Co. v. U.S. Dep't of Health and Human Servs.*,
   865 F.2d 320 (D.C. Cir. 1989)...........................................................17

*Wilson v. McRae's Inc.*,
   413 F.3d 692 (7th Cir. 2005) .............................................................20

**Statutes**

11 U.S.C. § 521(1) ..................................................................... 23, 24

11 U.S.C. § 541(a)(1).....................................................................23

11 U.S.C. § 704(a)(4)......................................................................26

28 U.S.C. § 1291 .............................................................................1

28 U.S.C. § 1292(a)(1).......................................................................1

28 U.S.C. § 1331 .............................................................................1

**Rules**

Fed. R. Bankr. P. 1009 ....................................................................26

Fed. R. Civ. P. 56(a)........................................................................17

# **GLOSSARY OF ABBREVIATIONS**

Prince George's Human Relations Commission (PGCHRC)

## JURISDICTIONAL STATEMENT

This is an appeal from a final order entered in the District Court on November 10, 2014, Order Granting Appellees' motions for summary judgment and dismissing Appellant Sandra Marshall's Amended Complaint with prejudice. (JA 478-479)  Appellant Sandra Marshall filed a timely Notice of  Appeal on December 8, 2014. (JA 490)   The judgment disposed of all issues between the parties. The United States District Court for the District of Columbia had jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  The United States Court of Appeals for the District of Columbia has jurisdiction over appeals from final decisions of the United States District Court for the District of Columbia pursuant to 28 U.S.C. §§ 1291 and 1292(a)(1).

## STATEMENT OF ISSUES

1.    Did Marshall Present Legally Sufficient Evidence That Required the District Court to Deny Defendants' Motions For Summary Judgment?

2.    Whether the district court erred by applying a narrow interpretation of the judicial estoppel doctrine and its factors "inadvertence", "mistake" and "intent", thus creating a new and impossible standard which is contrary to existing law?

3.    Whether the district court applied an incorrect legal standard when it found that Marshall's omission on her bankruptcy schedules was not a result of inadvertence, mistake or the lack of intent to deceive?

1

## STATUES

Pursuant to Rule 28 (f), Federal Rules of Appellate Procedure, and Circuit

Rule 28(a)(5), the pertinent statues and rules are set forth in the body of this brief.

## STATEMENT OF CASE

### A.    Factual Background

Appellant Sandra Marshall ("Marshall") was a 54 year old African

American female at the time she was discharged as a contractor from Honeywell

Technology Systems Inc. (Honeywell)[1] and from L-3 communications, Inc.

(formerly known as EER and currently known as Engility) in December 2003. (JA

54)   Marshall had worked as a contractor at NASA for 25 years. (JA65-67)

In or about 2001, she was promoted to the position of Voice Control

Supervisor. She was the only African American woman supervisor and the only

subcontractor employee in her department. She was only the only employee who

was not hired by defendants on the NASA 2004, contract. (JA 55-56)  She was told

by defendant SGT that it was told by Honeywell not to hire her, which Marshall

attributed to the internal and NASA agency discrimination and retaliation

complaints she had filed in previous years. She alleged she had been racially and

sexually harassed daily in the NASA workplace. (JA 67)  Marshall also alleged

---

[1] Honeywell's true name is Honeywell Technology Solutions, Inc. however for the
purposes of this case it is Honeywell Technology Systems, Inc. as titled in the
district court case.

2

that as a result of the defendants' discriminatory and retaliatory action towards her she lost income and suffered from stress and humiliation. (JA 57-58) Marshall had been making a salary of $50,000. (JA367)

After Marshall's December 2003, termination she filed administrative discrimination and retaliation charges against: (1)  SGT on or about December 29, 2003 (JA 146) and Honeywell, L-3 and SGT on February 20, 2004 with the Prince George's County Human Relations Commission (PGHC). (JA91 and 154)  From 2004 until 2005 Marshall alleged she was unable to get full time employment, she lost her apartment and was evicted, she and her husband separated, she moved in with family members and suffered with extreme depression, anxiety and PTSD as a result of the defendants' discriminatory and retaliatory actions taken against her. (JA 439, 475-486)

In September 2005, after being unable to support herself, Marshall filed for Chapter 7 bankruptcy as a pro se litigant. (JA97.) Marshall took several months to complete the bankruptcy forms.  At the time Marshall's administrative charges were still pending before the PGCHRC. Marshall inadvertently and mistakenly did not list her PGCHRC administrative charges on her bankruptcy form as a possible asset because she did not understand or believe she was required to do so. (JA 201) Marshall has signed under the penalty of perjury that she had listed all assets or potential assets.

3

However, Marshall when she answered the United States Trustees'
interrogatories (JA236) before her 341 Creditors' Meeting held on January 10,
2005, she disclosed that she did have a pending employment discrimination case
with the PGHRC. (JA 240-243) Marshall also orally disclosed on November 10,
2005, at her Bankruptcy Creditors Meeting before United States Trustee William
D. White ("Trustee"), that she had a pending discrimination administrative charge
and she further identified the name and telephone number of her discrimination
lawyer that her lawyer's telephone number. (JA 240-243) Marshall told the Trustee
reinstatement to her job and compensatory damages. (JA 242)  On or about
November 18, 2005, Marshall's discrimination attorney spoke to Trustee White
and identified all three of Marshall's PGCHC charges, the possible value of her
case and other requested information. (JA 246) She and her attorney were also
instructed by the Trustee to notify him when Marshall had filed her civil
discrimination complaint. (JA 246)

In 2005 and thereafter, Marshall was not aware and did not know or
understand that she was also required to formally amend her bankruptcy schedules
to add her PGCHR charges against defendants. (JA 364) On December 30, 2005,
in order not to miss the two year statue of limitations on her age claim, Marshall
filed an age discrimination case against defendants. (JA 51) After filing her civil

case, Marshall and her discrimination attorney informed the Trustee she had filed a civil complaint in district court as to age discrimination only. (JA 240 and 246)

The Trustee acted upon the 2005 and 2006 disclosures and information provided to him by both Marshall and her discrimination attorney. Marshall's Discrimination Counsel on or about November 18, 2005, pertaining to Marshall's pending administrative discrimination charges before the Prince George's County Human Relations Commission (PGCHRC) and specifically discussed:
(1) Marshall's pending discrimination charges, (2) her discrimination claims, (3) the potential value of her discrimination case, (4) when her case would be filed, (5) the name of the defendants, (6) Marshall's financial ability to pursue her discrimination claims, (7) the financial costs for pursuing Marshall's discrimination claims as well as other issues concerning Marshall's discrimination case.

After Marshall's disclosure to the Trustee she did not continue to pursue her 2005 civil case filed on December 30, 2005 until after her was discharged by the Trustee. (JA6)

The Trustee had his secretary/paralegal Katherine Mommsen (phonetic sounding spelling of secretary's name) to telephone and follow-up with Marshall's discrimination Counsel as to when Marshall had file her civil discrimination case. (JA246)

On January 9, 2009, after Marshall and her attorney disclosed the filing of Marshall's civil discrimination case filed on December 30, 2005, Trustee White made a request to the Bankruptcy Court for "Asset Notice". (JA 267)

On January 9, 2006, Trustee White made a request that the Bankruptcy Clerk "…please send notice to all creditors and parties in interest stating that there may be assets available for distribution and requiring that Proofs of Claims be filed in this case." (JA 267)

On January 9, 2006, Trustee White also moved to have himself and his law firm appointed to represent Marshall in her civil discrimination case (concerning Marshall's potential asset). (JA 260) The bankruptcy court issued an Order on January 31, 2006, appointing Trustee White and his law firm to represent Marshall's bankruptcy estate. (JA 264)

Trustee White on January 20, 2006, had the Bankruptcy Court to also issue an "Order and Notice Re Opportunity To Request Hearing Under 11U.S.C. Section 727 (a)(12) To Bar Entry of Discharge against Marshall. (270)

Trustee White on January 20, 2006, had the Bankruptcy Court to also issue an "Order and Notice Re Opportunity To Request Hearing Under 11U.S.C. Section 727 (a)(12) To Bar Entry of Discharge against Marshall. (JA 270)

Trustee on January 20, 2006, gave notice to Marshall's debtors of her

potential asset and the opportunity to file a claim against her asset (discrimination

case). (JA 267) The language from the notice was as follows:

### NOTICE OF POSSIBLE DIVIDENDS
### AND DEADLINE TO FILE PROOF OF CLAIM

It appeared from the schedules when the case was instituted that there were no assets from which dividends could be paid to creditors and the notice of initial meeting of creditors so indicated.

It now appears that the payment of a dividend may be possible. Pursuant to Bankruptcy Rule 3002 (c ) (5), the deadline for filing a Proof of Claim is fixed as 90 days after the mailing of this notice (which will occur two days after the date set forth below).

The deadline for filing a claim resulting from the rejection by the debtor of an executory contract or unexpired leas is 60 days after the rejection of the executory contract or the lease or 90 days after the date of this notice whichever is later, unless otherwise specified by the Court.

Except as otherwise provided by law, in order to share in any payment from the estate, a creditor must file a Proof of Claim by the date set forth above.

Dated 1/20/06

Marshall's Debtors did not file any claims or requested to bar entry of

discharge or a hearing by February 11, 2005, as required by law. Bankruptcy Rule

3002 ( c) (5). (JA 270) The Trustee did not enter his appearance in Marshall's Age

Claim case or pursue Marshall's administrative claims before the PGCHRC (JA

246)  On February 13, 2006, the Bankruptcy Trustee had the court to enter an

Order Discharging Marshall and Order re Discharge Objection (21 day obj.)
There were no claims filed by any of Marshall's debtors although they had notice
of her potential asset (discrimination case). (JA 248)

On February 13, 2006, Marshall was discharged from Bankruptcy. (JA 248)
On June 9, 2006, Trustee White issued a Report of No Distribution and concluded
that "…there are no assets to administer for the benefit of the estate and paid no
monies on account of the estate." (JA 249)    On June 13, 2006, the Bankruptcy
Court issued an "ORDER DISCHARGING TRUSTEE AND CLOSING FULLY-
ADMINISERED, NO ASSET CASE. (JA249) On June 13, 2006 the Bankruptcy
Court Closed Marshall's bankruptcy case. (JA 249)

Because Marshall believed that the Trustee abandoned her discrimination
case and discharged her bankruptcy case, she then pursued her discrimination case
in district court after June 13, 2006. (JA 249) Marshall in 2007 amended her
complaint and added additional claims. (JA 249) In 2009 during discovery between
the parties, Marshall voluntarily disclosed her 2005 bankruptcy filing and produced
copies of her bankruptcy filings from 2005-2006, to defendants. (JA 157)

Defendants reviewed Marshall's 2005 bankruptcy filings and subsequently
filed motions to dismiss and/or motions for summary judgment against Marshall
based on lack of standing and judicial estoppel. (JA 86 and 150) The district court
dismissed Marshall because she lacked standing to pursue her case inasmuch that

8

she had never formally added her discrimination case on her bankruptcy schedules, thus her discrimination case was still an asset not administered in her 2005 bankruptcy case. (JA 307) The Trustee was the true party in interest and the Court entered on December 18, 2009, an order allowing the Trustee 60 days in which to reopen Marshall's case and pursue her claims. (JA 289)

Marshall on January 20, 2009, filed a motion to reopen her bankruptcy case, which the bankruptcy court granted and her case was reopened. (JA 269)  A bankruptcy order was entered granting Marshall's motion on January 22, 2010 (JA 269) Subsequently Trustee White filed a motion to reopen Marshall's discrimination case, which was granted by the district court. (JA 300 and 304)  In 2010, the Trustee abandoned Marshall's discrimination case because he stated the asset had no value. (JA 304)

The district then allowed the defendants to renew their motions for summary judgment based on the doctrine of judicial estoppel. (JA 360) and Marshall renewed her oppositions to the defendants' motions. (JA 364 and 437) However, the district court failed to apply the rules and law concerning ruling on a motion for summary judgment and it wrongfully used a narrow and restrictive interpretation and application of the doctrine of "judicial estoppel" when dismissing Marshall's claims based on the its believe that "inadvertence and mistake" is inapplicable and ……" (JA191)

9

## SUMMARY OF ARGUMENT

The merits of this appeal concern the District Court's incorrect interpretation and application of inadvertence, mistake and intent when applied to judicial estoppel and its incorrect disposition of the factual matters and evidence when applying summary judgment rules and dismissing Marshall's case. Marshall's appeal challenges the district court's narrow and strict interpretation and of inadvertence, mistake and intent as it applies to the application of judicial estoppel. Marshall further challenges the district court's accuracy of its assessment of Marshall's evidence in support of her opposition to Appellees' motions for summary judgment.

This is a case of first impression, as this Court has never decided the proper standard to be applied by courts in this Circuit as to judicial estoppel as their interpretation of inadvertence, mistake and intent when determining when and if judicial should be applied to litigants. *New Hampshire v. Maine*, 532 U.S. 742 (2001) (indicating that judicial estoppel is not appropriate in cases amounting to no more than mistake or inadvertence).

The district court below applied a narrowly defined standard of judicial estoppel that would preclude any litigant from ever surviving the judicial estoppel doctrine in this Circuit. Such a standard would cause this Circuit to routinely dismiss meritorious cases regardless of the facts and circumstances as to any

10

bankruptcy omissions, which is not the holdings in of *Moses v. Howard Univ. Hosp.*, 606 F.3d 789 (D.C. Cir. 2010) or in *New Hampshire*. *Moses* does not stand for the proposition that the judicial estoppel doctrine is inflexible.  The above cases support the presumption that judicial estoppel is flexible and should be determined on the facts on a case-by case basis, which includes looking at a litigants' actions, mental state of mind, knowledge and understanding, any language barriers or any other facts and/or challenges which may have caused them to make omissions and mistakes in their bankruptcy filings.  *Ah Quinn v. Cnty. Of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013)

Judicial estoppel was not meant to be "…a technical defense for defendants seeking to derail or sabotage potentially meritorious claims." *Ryan Operations G. P. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3d Cir. 1996). Marshall presented substantial evidence to the district court that her omission  and failure of not amending her bankruptcy schedules to add her discrimination case in bankruptcy court was inadvertent and a mistake and that she had no intent of concealing her assets. (JA274)

In the district court there were heated factual disputes between the parties as to the nature and extent of Marshall's disclosures to her Chapter 7 Trustee as to her discrimination charges and civil discrimination case. However, the district court did not review and/or consider the evidence submitted by Marshall and was clearly

11

dismissed as even being relevant by the district court for summary judgment or judicial estoppel  purposes.  The factual history presented by the district court was remiss with inaccuracies and omissions of facts. (JA191) The court's own Memorandum and Opinion was devoid of any summary judgment analysis and the court never reviewed any of the evidence in the light most favorable to Marshall as required by law and the rules. The court only acknowledged that Marshall verbally disclosed her administrative discrimination charge against Honeywell and nothing more. It was dismissive of Marshall and her counsel's affidavits that provided significantly more information that distinctively supported Marshall's contentions and allegations that she did not intend to not formally disclose her discrimination case and her omission was inadvertent and a mistake. (JA266 and 274)

Marshall also presented evidence and testimony in her district court case that during the period that she had filed her discrimination charges, lost her job, was substantially unemployed, had a family breakup and filed for Chapter 7 bankruptcy she was suffering with chronic depression, being treated by a psychiatrist, on medication, diagnosed with PTSD and receiving Social Security Disability payments to financially survive. (JA476-486) With all of these substantial problems that Marshall dealt with, the Court did not find it relevant that Marshall's mental health was not relevant when she was filing her bankruptcy case.

The district court was required under *New Hampshire* to assess and consider all of Marshall's evidence when ruling on the Appellees' motions for summary judgment and determine if it was appropriate to apply judicial estoppel to Marshall's set of facts and circumstances. Instead the district court applied a strict standard of "presumption of deceit" a standard by which no plaintiff-debtor can rebut under any factual scenario, circumstances or events surrounding omissions in a bankruptcy case. (JA191) The district court was required to make a reasonable inquiry into whether a plaintiff-debtor's bankruptcy filing was in fact inadvertent or a mistake and/or did she exhibit any action that even implied that she was trying to deceive the courts, as those terms are commonly understood and used and the apply the Rule 56 and the standards to be applied to a motion for summary judgment. *Ah Quinn v. Cnty. Of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013)

The district court applied an automatic presumption of "guilt" standard and a pro se plaintiff-debtor or any plaintiff-debtor could never rebut that presumption of automatic guilt with evidence of inadvertence and mistake  and such a presumption is again "... fundamentally at odds with equitable principles. Judicial estoppel is a discretionary doctrine, to be applied on a amend "establish inflexible prerequisites on an exhaustive formula for determining the applicability of judicial estoppel"). *New Hampshire*

13

In the Sister Circuits on the same issue, they have held that when a Plaintiff notifies their bankruptcy Trustee of a potential asset/claim and of his filing of a civil lawsuit and the Trustee has knowledge of the Plaintiff's claim, it precludes the district court from applying judicial estoppel, "since it is obvious that the Plaintiff was obviously not trying to defraud the court if they placed the Trustee on notice. (JA 250)  The bankruptcy court believed Marshall and allowed her to reopen her bankruptcy case in 2009, and she was formally allowed to amend her bankruptcy schedules. (JA 318, 322 and 385)  She also chose not to exempt any portion of her potential asset from her creditors. (JA 385)

Sister Courts have also held that when a bankruptcy court permits a party to reopen a bankruptcy case that was closed to amend their schedules to formally add a potential asset that also precludes a district court from applying the judicial estoppel doctrine in order to stop a Plaintiff from continuing to pursue their civil lawsuit.  *Ah Quinn v. Cnty. Of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013)

The district court ignored all evidence of Appellant's inadvertence or mistake and made no inquiry as to whether there was inadvertence or mistake.

**DISTRICT COURT CREATED A NEW AND RESTRICTIVE STANDARD FOR APPLYING JUDICIAL ESTOPPEL,WHICH IS CONTRARY TO THE CURRENT LAW.**

 The district court in this matter incorrectly applied a narrow and strict standard in *Moses v. Howard Univ. Hosp.*, 606 F.3d 789 (D.C. Cir. 2010)  It further abused its discretion by applying a standard for judicial estoppel that is so restrictive that a discrimination litigant would never be able to past muster pursuant to its application of this doctrine, which is contrary to the Supreme Court case of  *New Hampshire v. Maine*, 532 U.S. 742 (2001) (indicating that judicial estoppel is not appropriate in cases amounting to no more than mistake or inadvertence).

The district court created a new impossible standard in which to apply judicial estoppel , a standard that is insurmountable because the court did not consider the facts but took the legal position that solely because a bankruptcy litigant failed to correct or amend their bankruptcy schedules to add an asset that they knew about meant automatically that they intended to mislead the courts. This new standard is completely at odds with existing law. *Moses*

In order for a district court to apply judicial estoppel it must fairly and impartially consider all circumstances and facts of a particular case and determine if there was bad faith and the district court failed to do that in Marshall's case. *Burnes v. Pemco Aeroplex Inc.,* 291 F.3d 1282 (11th Cir. 2002).

15

Inasmuch that it was factually clear that Appellant had verbally disclosed and revealed her administrative discrimination charges and the filing of her initial age discrimination case as requested by the bankruptcy Trustee and the Trustee acted upon those disclosures, there was no bad faith or intent on the part of Appellant to deceive any court and that any omissions that she made were a mistake and/or inadvertent. (JA260-262)

## ARGUMENT

### A. STANDARD OF REVIEW

#### 1. Summary Judgment

The District Court granted summary judgment in favor of Appellees on the ground that Marshall's discrimination claims are barred by judicial estoppel. This court reviews the District Court's grant of summary judgment de novo, see, e.g., *Haynes v. Williams*, 392 F.3d 478, 481 (D.C.Cir.2004), and "must view the evidence in the light most favorable to the nonmoving party," *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C.Cir.2002).

Under the governing law for applying summary judgment, a court is required to "construe and consider the pleadings, related documents and evidence in the light most favorable to the non-moving party. *Adickes v. Kress Co.*, 398 U.S. 144 (1970).

16

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Washington Post Co. v. U.S. Dep't of Health and Human Servs.,* 865 F.2d 320, 325 (D.C. Cir. 1989).

To defeat summary judgment, a plaintiff must produce more than "a scintilla of evidence to support his claims." *Freedman v. MCI Telecomms. Corp.,* 255 F.3d 840, 845 (D.C. Cir. 2001).

### 2.    <u>Judicial Estoppel</u>

This e D.C. Circuit, however, has yet to determine the standard governing the review of District Court applications of judicial estoppel. The Supreme Court has indicated that judicial estoppel " 'is an equitable doctrine invoked by a court at its discretion,' " *Maine*, 532 U.S. at 750 (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990) (internal quotation marks and citation omitted)), and "[a] majority of [the] circuits that have addressed the issue apply the abuse of discretion standard." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1046 (8th Cir.2006); *see also Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 30-31 (1st Cir.2004) (citing *In re Coastal Plains*, 179 F.3d at 205; *Talavera v. Sch. Bd.*, 129 F.3d 1214, 1216 (11th Cir.1997); *McNemar v. Disney Store, Inc.*, 91 F.3d 610,

616-17 (3d Cir.1996); *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565

(Fed.Cir.1996); *United States v. Garcia*, 37 F.3d 1359, 1367 (9th Cir.1994)).

But other courts have used a de novo standard of review see *Eubanks v.*

*CBSK Fin. Group*, 385 F.3d 894, 897 (6th Cir.2004) (applying a de novo standard

of review); accord *United States v. Hook*, 195 F.3d 299, 305 (7th Cir.1999).

The D.C. Circuit, however, has not determined the standard governing the

review of district court applications of judicial estoppel. The Supreme Court has

held that judicial estoppel " 'is an equitable doctrine invoked by a court at its

discretion,' " *Maine*, 532 U.S. at 750 (quoting *Russell v. Rolfs*, 893 F.2d 1033,

1037 (9th Cir.1990) (internal quotation marks and citation omitted)), and "[a]

majority of [the] circuits that have addressed the issue apply the abuse of discretion

standard." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1046 (8th Cir.2006); also

*Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 30-31 (1st Cir.2004)

(citing *In re Coastal Plains*, 179 F.3d at 205; *Talavera v. Sch. Bd.*, 129 F.3d 1214,

1216 (11th Cir.1997); *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 616-17 (3d

Cir.1996); *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed.Cir.1996); *United*

*States v. Garcia*, 37 F.3d 1359, 1367 (9th Cir.1994)). "The district court

necessarily abuses its discretion when it bases its decision on an erroneous legal

standard… *Farris v. Seabrook*, 677 F.3d 858 (9th Cir. 2012) (internal quotation

marks omitted). But in *Eubanks v. CBSK Fin. Group*, 385 F.3d 894, 897 (6th Cir.2004) that court applied a different standard, "(applying a de novo standard of review); accord *United States v. Hook*, 195 F.3d 299, 305 (7th Cir.1999)."

### B.      STANDING

Appellant Sandra Marshall has standing to bring this appeal. Standing has not been raised and nor is it an issue in this appeal.

### C.      MARSHALL PRESENTED LEGALLY SUFFICIENT EVIDENCE THAT REQUIRED THE DISTRICT COURT TO DENY APPELLEES RENEWED MOTIONS FOR SUMMARY JUDGMENT.

Marshall's discrimination claims should not have been dismissed on defendants motions for summary judgment as she submitted to the district sufficient evidence to support her claims that her omissions in her bankruptcy case were inadvertent, a mistake and not intentional. She also produced sufficient evidence that she had dealt with the courts in good faith.  However, the district court ignored Marshall's evidence and facts and did not apply the standards it was required to apply when ruling on a motion for summary judgment and it ignored the undisputed facts as Marshall had presented in the district court. *Ah Quinn v. Cnty. Of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013).

More important, the district court was dismissive of Marshall's and her discrimination attorney's affidavits, which is contrary to how that court was required to do when ruling on a motion for summary judgment. Courts have held that a party may rebut a motion for summary judgment with their own affidavit based on personal knowledge and a court should not "dismiss or denigrate this type or any evidence when deciding whether a material dispute requires a trial." *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) and *Wilson v. McRae's Inc.*, 413 F.3d 692, 694 (7th Cir. 2005).

What is even more telling as to the district court's failure to follow Rule 56 on motions for summary judgment to view and make all inferences in the light most favorable to the nonmoving party. However, the district court's memorandum and opinion is completely devoid of any mention of most of the evidence that Marshall submitted. (JA191) The district court only analyzed the evidence and argument present by defendants. The district court was dismissive of most of Marshall's evidence and argument as to why the court should not grant the motions for summary judgment including her affidavits, creditors meeting transcript and bankruptcy filings made by the trustee in 2006 to allow the creditors to file their claims against her.

Marshall's evidence that her bankruptcy omission was inadvertent was not only briefly addressed by the district court but immediately dismissed as quickly as it was raised. Judicial estoppel should not have been applied against Marshall in the district court, when her omission of not including her case on her bankruptcy schedules, was clearly inadvertent and she had no intent to conceal her discrimination claim. Nor should the district court narrowly applied and interpreted the application of judicial estoppel to exclude other facts in considering whether to apply the doctrine. Other courts have held that when a party has inadvertently and mistakenly taken a position that was based on inadvertence or mistake-courts should resist applying judicial estoppel. *New Hampshire*, 532 U.S. at 753. The district court opined that it did not matter whether Marshall's omission of not including her discrimination claim on her bankruptcy case was inadvertent or a mistake, that it was applying the narrow view of this circuit which only requires that she knew of the claim and she failed to include it on her bankruptcy schedules. (JA191) Again this sort of analysis and application of judicial estoppel is inconsistent with holding in *New Hampshire*.

Nor did Marshall's failure to disclose her pending discrimination claims in her bankruptcy proceedings create a clear inconsistency upon which Marshall benefitted from, when the trustee delayed her discharge and allowed the creditors to file claims. Marshall had adequately explained to the district court why she had

21

made her omission. (274-276) She stated that her omission was due to her pro se status, that she did not understand that she was required to list her discrimination case on her bankruptcy schedule, she was also going through chronic depression and she believed that when she and her attorney had orally informed the Trustee of her discrimination claims she had disclosed her potential asset and there nothing more that she was required to do. The district court's response was that it did not matter what reasons Marshall had for omitting her discrimination case from her bankruptcy schedules, which is "fundamentally at odds with equitable principles." *Ah Quinn v. Cnty. Of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013).

Judicial estoppel "`is an equitable doctrine invoked by a court at its discretion.'" *New Hampshire v. Maine,* 532 U.S. 742, 750 (2001) (quoting *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir. 1990)). The Supreme Court holds that judicial estoppel is to be applied on a case by case basis. *New Hampshire* 532 U.S. at 751 ("refusing to establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel").

The Marshall's facts and supporting evidence did not justify the application of the judicial estoppel doctrine. Nor was Marshall's bankruptcy filings and her pleadings in the instant discrimination case "clearly inconsistent" or inconsistent with her disclosing her discrimination case although not in the right format. In her

bankruptcy proceedings, Marshall was required, under penalty of perjury, to complete several documents about her assets, potential legal claims, and potential claims against her-what she did not understand as a pro se litigant was that she was also required to list her administrative charges and later amend and add her discrimination case. 11 U.S.C. §§ 521(1), 541(a)(1) (2012). Marshall had orally disclosed her discrimination case to the trustee despite these requirements. Her actions was not an intent to conceal her case. Marshall did not disclose her pending Charges of Discrimination or the instant case prior to discharge of her bankruptcy, and she continued to pursue her discrimination claims while in bankruptcy even though she was no longer a proper plaintiff.

But Marshall presented legally sufficient evidence that supported her assertions that any omissions by her were inadvertent, a mistake and she had no intent to deceive the courts-thus judicial estoppel should not have been applied to her. *New Hampshire* and *Ah Quin.*

### D.    COURTS HAVE HELD THAT WHEN DEBTOR ORALLY INFORMS TRUSTEE AND DEBTOR REOPENS BANKRUPTCY CASE JUDICIAL ESTOPPEL SHOULD NOT BE APPLIED.

Marshall's attempt to rectify her omission of formally amending her bankruptcy schedules by reopening her bankruptcy proceedings and disclosing the

23

present case was proper and availing. *Ah Quinn v. Cnty. Of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013)

Sister Circuits have held that when a debtor orally discloses to a trustee in their creditors meeting a claim or potential claim, judicial estoppel should not be applied. *Mathews v. Potter*, 316 Fed Appx. 518 (7th Cir. 2009) and *Eubanks v. CBSK Fin. Group, Inc*., 385 F.3d 894, 898 & n.1 (6th Cir. 2004) "(holding that judicial estoppel was inapplicable where debtor omitted potential claim against defendant from Chapter 7 schedules but orally disclosed it to the trustee during the meeting of creditors);" *InterGen N.V. Grina*, 344 F.3d 134, 144 (1st Cir. 2003) (rejecting application of judicial estoppel where a corporate plaintiff, after discovery, amended its complaint to revise factual allegations that, according to the defendant, undermined plaintiff's claims).

In *Matthews*, that court found that because she was a pro se litigant and had orally disclosed her discrimination case to the trustee during her creditors meeting, she did not conceal her claim, although she too had failed to amend and add her claim to her bankruptcy schedules. Mathews a postal employee had filed administrative charges of discrimination against the United States Postal Service because according to her they had engaged in persistent discrimination and retaliation that ended with her being terminated. Because Mathews had orally

24

informed the trustee of her case and she reopened her case to add the

discrimination claim, the 7th Circuit reversed the district courts dismissal of her

discrimination case. The court further opined that it drew all reasonable inferences

in Mathews favor when reviewing the district court record. However, in Marshall's

case the district court did not draw any favorable inferences when applying

summary judgment to her case.

Also, in *Germano v. Int'l Profit Ass'n*, 544 F.3d 798, 800 (7th Cir. 2008) the

plaintiff in that case submitted her own affidavit just Marshall did in her case. In

Germano's affidavit she too stated that she had informed the trustee about her

pending administrative complaints at her creditors meeting for her chapter 7

bankruptcy case. Neither the *Mathews* or *Germano* cases were measured by the

appellate court based simply on two factors: (1) whether they omitted their claims

on their bankruptcy schedule and (2) did they have knowledge about their claim

before they filed their bankruptcy case-as a district court cannot make a judicial

estoppel solely on that basis but on other information as well. *Mathews v. Potter*,

316 Fed Appx. 518 (7th Cir. 2009)

In *Eubanks* the court went even further in its analysis by holding that a

"trustees knowledge of a claim precludes the application of judicial estoppel since

25

the plaintiff was obviously not trying to defraud the court if they placed the trustee on notice.

The bankruptcy code as written contemplates that debtors may and do forget and/or later discover and informs the trustee of additional assets, which means under the bankruptcy law, it recognizes that litigants are not perfect. Thus in the bankruptcy code the trustee has an obligation to investigate a debtor's financial affairs. 11 U.S.C.§ 704(a)(4) and to examine the debtor at the meeting of creditors. Fed. R. Bankr.P. 1009  So when Marshall and her disclosed her discrimination charges and case to her trustee she did not conceal or have the intent to conceal her case and her omission of adding her case to her bankruptcy schedules was inadvertent and a mistake.

Even if the district court had correctly believed that it could dismiss Marshall's discrimination case, it could not have deprived her ability to be reinstated, as that pray for relief in her amended complaint was not monetary. (JA 82) Courts have also held that reinstatement has no value and is of no consequence to either the trustee or creditors-thus judicial estoppel should not have been applied to Marshall's request for reinstatement and on that basis alone her case should not have been dismissed. *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288-89 (11th Cir. 2002) and *Barger v. City of Cartersville*, 348 F.3d at 1297 (11th Cir.

2003) (holding that debtor's request for reinstatement was not barred by judicial estoppel)

Contrary to the district court, when Marshall reopened her bankruptcy case, she did amend Schedule C of her Bankruptcy Petition to notify her bankruptcy creditors that her disclosed asset was not exempt-by not designating any exemptions.  Nor was Marshall required to identify or declare any potential asset as exempt unless she wanted to designate it as exempt-she did not exempt any potential asset from possible collection from her creditors. Nor did the bankruptcy court inform her that her amended Schedule C was deficient in any manner.

Nor was it unclear as to who the real party was after Marshall amended schedule C. It also did it have an impact on the Trustee as to how to proceed with Marshall's case when he had already openly disclosed to the defendants that Marshall's estate had no money to pursue her claims and he had no attorney to fight her case-these remarks alone alerted defendants to the fact that they had the edge when it came to any settlement negotiations and the fact that they did not have to settle at all. (JA318 and 322)

The bankruptcy court allowed Marshall to reopen her bankruptcy case to add her discrimination case and to possibly pay her creditors. Correcting a mistake to benefit Marshall's creditors if she prevailed in her discrimination does not a

27

"create a perverse incentive" but allows creditors to be potentially paid. Other Circuits have found that when a debtor re-opens a bankruptcy case, judicial estoppel should not be applied. Also, the re-opening of a bankruptcy case should always be an option for those litigants who have made a mistake as to their bankruptcy filings due inadvertence or mistake-how else would the debtor be able to correct a mistake. *Ah Quinn v. Cnty. Of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013)  To leave a litigant without any avenue or means in which to correct a mistake would be abusive at the very least.

Nor was there any evidence that Marshall's bankruptcy creditors were disadvantaged by her initial nondisclosure. Marshall's creditors were informed not only once but twice that she had potential assets in 2005 and in 2010 and to file their claims and none of them chose to do so. The fact that Marshall's bankruptcy case closed without any assets certainly did not prevent early discussions of settlement or abandonment by the Trustee because he could have contacted the defendants in 2005 when the information was disclosed to him.

Nonetheless, Marshall had informed the bankruptcy court that she was amending her schedules to include additional debt that she had incurred and there is no evidence in the district court record that any settlement would have taken place in 2005, when it had already been two years since Marshall filed her

28

discrimination charges and at no time in those two years did any of the defendants agree or propose mediation or settlement with the PGCHRC. The addition of the new debt did not limit the trustee's ability to negotiate a settlement as the trustee did that himself when he informed the defendants he had no money to pursue Marshall's case and no legal skills to prosecute her case. (JA318-322)

Finally, Marshall's bankruptcy proceedings and her discrimination case were not related. The defendants were not parties to Marshall's bankruptcy case and lost nothing by Marshall having inadvertently omitted her discrimination case on her bankruptcy case. Nor did she have any motivation to conceal the discrimination claims and more importantly she did not conceal her discrimination claims.

### E. DISTRICT COURT DID NOT APPLY THE CORRECT TEST AND STANDARD FOR JUDICIAL ESTOPPEL. IT CREATED A STANDARD THAT IS IMPOSSIBLE TO OVERCOME WHEN BANRUPTCY OMISSIONS ARE DUE TO INADVERTENCE AND MISTAKE AND NO INTENT TO CONCEAL.

The merits of this appeal concern the District Court's incorrect interpretation of inadvertence, mistake and intent when applied to judicial estoppel and its disposition of the factual matters and evidence when applying summary judgment rules. Marshall's appeal challenges the district court's narrow and strict interpretation and of inadvertence, mistake and intent as it applies to the

29

application of judicial estoppel. Marshall further challenges the district court's

accuracy of its assessment of Marshall's evidence in support of her opposition to

Appellees' motions for summary judgment. *Ah Quinn v. Cnty. Of Kauai Dep't of*

*Transp.*, 733 F.3d 267, 271 (9th Cir. 2013).

This is a case of first impression, as this Court has never decided the proper

standard to be applied by courts in this Circuit as to judicial estoppel as their

interpretation of inadvertence, mistake and intent when determining when and if

judicial should be applied to litigants. *New Hampshire v. Maine*, 532 U.S. 742

(2001) (indicating that judicial estoppel is not appropriate in cases amounting to no

more than mistake or inadvertence).

The district court below applied a narrowly defined standard of judicial

estoppel that would preclude any litigant from ever surviving the judicial estoppel

doctrine in this Circuit. Such a standard would cause this Circuit to routinely

dismiss meritorious cases regardless of the facts and circumstances as to any

bankruptcy omissions, which is not the holdings in of *Moses v. Howard Univ.*

*Hosp.*, 606 F.3d 789 (D.C. Cir. 2010) or in *New Hampshire*. *Moses* does not stand

for the proposition that the judicial estoppel doctrine is inflexible.  The cases

supports the presumption that judicial estoppel is flexible and should be

determined on the facts in a case-by case basis, which includes looking at a

litigants' actions, mental state of mind, knowledge and understanding, any

30

language barriers or any other facts and/or challenges which may have caused them to make omissions and mistakes in their bankruptcy filings. *Ah Quinn v. Cnty. Of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013).

Judicial estoppel was not meant to be "…a technical defense for defendants seeking to derail or sabotage potentially meritorious claims." *Ryan Operations G. P. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3d Cir. 1996). Marshall presented substantial evidence to the district court that her omissions in bankruptcy court were inadvertent and a mistake and that she had no intent of concealing her assets. (JA274)

In the district court there were heated factual disputes between the parties as to the nature and extent of Marshall's disclosures to her Chapter 7 Trustee as to her discrimination charges and civil discrimination case. The evidence submitted by Marshall was never considered and/or reviewed and clearly dismissed as even being relevant by the district court for summary judgment or judicial estoppel purposes. (JA191) District Court Memorandum and Opinion (devoid of any comments of the evidence and undisputed facts submitted by Marshall except for the fact that she verbally disclosed her administrative discrimination charges).

Marshall also presented evidence and testimony in her district court case that during the period that she had filed for her discrimination charges, lost her job and was substantially unemployed and filed for Chapter 7 bankruptcy and her civil

31

discrimination case she was suffering with chronic depression, being treated by a

psychiatrist as to her depression and was as of 2009 on medication, diagnosed with

PTSD and receiving Social Security Disability payments to financially survive.

(JA475)  A party's mental state of mind should also be considered when assessing

and evaluating when to apply and use judicial estoppel. *New Hampshire.*

The district court was again required under *New Hampshire* to assess and

consider all of Marshall's evidence when ruling on the defendants' motions for

summary judgment and determine if and how it was appropriate to apply judicial

estoppel to Marshall's set of facts and circumstances. Instead the district court

applied a strict standard of "presumption of deceit" a standard by which no

plaintiff-debtor can rebut under any factual scenario, circumstances or events

surrounding omissions in a bankruptcy case. The district court was required to

make a reasonable inquiry into whether a plaintiff-debtor's bankruptcy filing was

in fact inadvertent or a mistake, as those terms are commonly understood and used

and the apply the rules  and standards to be applied to a motion for summary

judgment. *Ah Quinn v. Cnty. Of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th

Cir. 2013).

The district court applied an automatic presumption of "guilt" standard and a

Pro Se plaintiff-debtor or any plaintiff-debtor can never rebut that presumption of

automatic guilt with evidence of inadvertence and mistake  and such a presumption

is again "... fundamentally at odds with equitable principles. Judicial estoppel is a discretionary doctrine, to be applied on a amend "establish inflexible prerequisites on an exhaustive formula for determining the applicability of judicial estoppel").
*New Hampshire.*

In the Sister Circuits on the same issue, they have held that when a Plaintiff notifies to their bankruptcy Trustee of potential asset/claim and of his filing of a civil lawsuit and the Trustee has knowledge of the Plaintiff's claim, it precludes the district court from applying judicial estoppel, "since it is obvious that the Plaintiff was obviously not trying to defraud the court if they placed the Trustee on notice. The bankruptcy court believed Marshall and allowed her to reopen her bankruptcy case in 2009, and she formally amended her bankruptcy schedules. See Exhibit 10 and 11.

Sister Courts have also held that when a bankruptcy court permits a party to reopen a bankruptcy case that was closed to amend their schedules to formally add a potential asset that also precludes a district court from applying the judicial estoppel doctrine in order to stop a Plaintiff from continuing to pursue their civil lawsuit. *Ah Quinn v. Cnty. Of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013).

The district court ignored all evidence of Appellant's inadvertence or mistake and made no inquiry as to whether there was inadvertence or mistake. The

district court in this matter incorrectly applied a narrow and strict standard in

*Moses v. Howard Univ. Hosp.*, 606 F.3d 789 (D.C. Cir. 2010) It further abused its

discretion by applying a standard for judicial estoppel that is so restrictive that a

discrimination litigant would never be able to past muster pursuant to its

application of this doctrine, which is contrary to the Supreme Court case of *New*

*Hampshire v. Maine*, 532 U.S. 742 (2001) (indicating that judicial estoppel is not

appropriate in cases amounting to no more than mistake or inadvertence).

 The district court created a new impossible standard in which to apply

judicial estoppel, a standard that is insurmountable because the court did not

consider the facts but took the legal position that solely because a bankruptcy

litigant failed to correct or amend their bankruptcy schedules to add an asset that

they knew about meant automatically that they intended to mislead the courts.

This new standard is completely at odds with existing law. *New Hampshire* and

*Moses.*

 In order for a district court to apply judicial estoppel it must fairly and

impartially consider all circumstances and facts of a particular case and determine

if there was bad faith and the district court failed to do that in Marshall's case.

*Burnes v. Pemco Aeroplex Inc.,* 291 F.3d 1282 (11th Cir. 2002)

 Inasmuch that it was factually clear that Appellant had verbally disclosed

and revealed her administrative discrimination charges and the filing of her initial

age discrimination case as requested by the bankruptcy Trustee and the Trustee acted upon those disclosures, there was no bad faith or intent on the part of Appellant to deceive any court and that any omissions that she made were a mistake and/or inadvertent. Thus Marshall asserts again that the judicial estoppel doctrine should not have been applied to her case.

### F.    MARSHALL MADE A CHOICE NOT TO EXEMPT HER DISCRIMINATION CASE PROCEEDS FROM HER CREDITORS.

Although the district court ruled that Marshall had no standing to pursue her discrimination claims, the district court entered an order giving the Trustee 60 days in which to file a motion to re-open Marshall's case and to litigate that case. Marshall made a choice to reopen her bankruptcy case and to amend her bankruptcy schedules including schedule C. Marshall did not fail to exempt or designate her discrimination case as exempt. She chose not to make any exemption.

Specifically, the bankruptcy docket shows that Marshall was able to reopen her bankruptcy case on January 22, 2010. (JA245) Marshall was notified of two (2) deficiency notices, one on 1/29, 2010 and the second on 3/8/2010, of which she cured both. (JA245) The Bankruptcy record also shows that Marshall cured both of her bankruptcy deficiencies, one on February 16, 2010 and the second and last deficiency on March 8, 2010. (JA245) There was no bankruptcy deficiency

notice against Marshall for allegedly failing to exempt her only asset from her creditors, which was her discrimination case, as there is absolutely no requirement for a bankruptcy debtor to exempt property from their creditors unless they want to, Marshall  did not want or chose to exempt her creditors from receiving potentially money from her discrimination case and the Appellees has not cited any law that requires a debtor to do so-which also shows she had no intent to conceal her asset.

Thus the Bankruptcy Trustee was never handicapped because Marshall made a choice not to take an exemption as to any potential proceeds from her creditors-he states so in his motion to dismiss filed February 18, 2010. (JA318)

The record shows that the Trustee filed his motion to reopen on February 18, 2010, in which he openly admitted that he was handicapped in pursuing Marshall's case because as he sated in his own words there was no money in Marshall's estate, he had no money to finance her case, he lacked the legal expertise to pursue her case and it would be difficult for him to hire new counsel. (JA 318) His statement was as follows:

> If the Trustee were to be the sole party in interest, it appears that recovery on the asset represented by this litigation would be best accomplished through active participation of the Debtor as well as her current counsel. "At this time, the bankruptcy estate has no funds, and it

would be difficult for the Trustee to attract new counsel,
unfamiliar with the case on a contingency basis.

See Exhibit 12, page 2 of Trustee's Motion To Reopen

It was clear from the Trustee's own words from the beginning when he had

Marshall's case reopened that he was handicapped due to lack of money and legal

expertise in litigating discrimination cases. The Trustee chose not to employ

Marshall's discrimination counsel to continue to litigate her claims and he made

the choice to litigate the case himself and/or to try and settle the matter which was

unsuccessful. Appellees had no incentive or reason to settle Marshall's

discrimination case when the Trustee had already admitted in writing to

Marshall's opponents (defendants) that he had no money to finance her

discrimination case or legal expertise in litigating Discrimination cases-it was

clearly a win win situation for the Appellees.

Nor was there anything wrong with Marshall choosing to share here

proceeds with her creditors if she were ever to receive them from her

discrimination case.

The Appellees argument that Marshall's discrimination attorney whom she

owed attorney fees to was somehow required to forego those fees after fighting

and litigating for Marshall for more than six (6) years, must also fail and had

absolutely no impact on the Trustee's failure to settle Marshall's case. Marshall

as the debtor had an obligation to include any and all new creditors that she owed

money to, including her then discrimination lawyer. Had Marshall excluded her own discrimination lawyer's attorney fees on her Amended Schedules Appellees would have made and had a different argument to make. Neither the Trustee nor Marshall's creditors were entitled to reap the benefits of any settlement in Marshall's discrimination case based on her counsel's work and without Marshall's estate paying her attorney fees-that would clearly fall under the doctrine of unjust enrichment.

Although judicial estoppel is not reduced to a set formula there are factors which most courts consider when making a determination whether to apply judicial estoppel. Most courts will use three factors: (1) whether a party's later position was inconsistent with its earlier position; (2) whether the party succeeded in persuading a court to accept its earlier position and (3) whether the party seeking to assert an inconsistent position gained an unfair Advantage that is detrimental to the opposing party. *New Hampshire* holds that there is no exhaustive formula for applying judicial estoppel but that it "…may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence and mistake." *New Hampshire* 532 U.S. at 753.

The district court in this matter only concerned itself with whether Marshall knew about her claims when she filed for her Chapter 7 bankruptcy

38

and whether she had a motive to conceal her claim. This interpretation and application of judicial estoppel is narrow and restrictive and a litigant would always loose under this formula.

In Marshall's case the district court's actions showed it ignored all relevant factual evidence that Marshall submitted to support her claims of inadvertence, mistake and intent. Instead the district court felt "bound" to preclude the majority of Marshall's evidence of inadvertence, mistake and intent, which is fundamentally at odds with *New Hampshire*, 532 U.S. at 751.

Marshall's facts, circumstances and submissions of evidence were not disputed by Appellees and they were integral and substantial evidence to support her position and arguments in her opposition to Appellees' motions for summary judgment. The district court was not make a decision on the truthfulness or veracity of the affidavits when deciding a motion for summary judgment and it was required to decide the motions in the light most favorable to Marshall but failed to do so. *U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 24 (D.D.C. 2010).

Nor did Marshall facts and circumstances in her case meet the three factors that most courts use in determining whether to apply judicial estoppel to prevent her from pursuing her discrimination action because:

    (a)    her position in the bankruptcy court – Marshall's position in the bankruptcy court had not changed. She and her

discrimination Counsel verbally  disclosed her administrative charges and civil lawsuit to the Trustee who took immediate action to protect creditors based on the disclosures, which showed no intent to conceal her asset and nor was it inconsistent with her pursuit of this case;

(b)     her disclosures to the Trustee put him on notice and was evidence that  Marshall a pro se bankruptcy debtor was not trying and did not misled the bankruptcy court. Marshall's mistake was not understanding the law and that she was required to formally amend her schedules to include her administrative charges and civil case. The bankruptcy court in 2005-2006 based on Marshall's disclosures reopened and delayed Marshall's Chapter 7 case to allow creditors to file claims and bar her chapter 7 discharge and he gave notice to Marshall's creditors that she had a potential asset, which they all chose to file no claims. The creditors at all times were protected by the Trustee and Marshall gained no benefit. It was the Trustee's decision after the creditors filed no claims to abandon Marshall's bankruptcy case and discharge her case as a "no asset" case in 2006. Marshall's failure to formally amend her schedules was inadvertent and a mistake. (JA274)

(c)     Marshall did not receive any an unfair advantage, and the creditors were not harmed as in 2006, the Trustee reopened her bankruptcy case, delayed her discharge and allowed Marshall's creditors to file claims and make objections to her discharge and to her potential asset. In 2010 voluntarily reopened her bankruptcy case and claimed no exemption to her the potential proceeds in her discrimination case, which ultimately allowed her creditors to make a claims and collect on their debts. Her actions was a benefit to her creditors and not to herself.

(d)     Marshall's actions and positions did not derive or cause any unfair advantage or impose any unfair detriment to the Appellees as they were the individuals she was suing and not her creditors.

(e)     Nor did omissions by Marshall cause any delay in any potential settlement as the Trustee was given information and

40

notified about the three Appellees and he never pursued settlement. In 2010 when the Trustee attempted to settle Marshall's case, the Appellees had no reason or motive to settle. (JA 318 and 322)

For the reasons set forth below, this Court should reverse the district court's order granting the defendants' motions for summary judgment because any omission by Marshall as to the filing of her bankruptcy schedules were inadvertent and a mistake and none of the factors considered under judicial estoppel apply in her case.

The application and interpretation of summary judgment and judicial estoppel used by the district court against Marshall by dismissing her case was improper because the facts and evidence were in serious dispute, the law in this matter is not clear and concise and the district court has created a new standard by which to dismiss meritorious cases by using a strict and inflexible standard and interpretation for judicial estoppel. *John S. Clark Co. v. Farggert & Frieden, P.C.*, 65 F.3d 26, 27 (4th Cir. 1993) (refusing to apply judicial estoppel where facts are in dispute).

## **<u>CONCLUSION</u>**

The Appellant Sandra Marshall moves this court to reverse the district court grant of Appellees' motions for summary judgment and remand the case back to the district court for further proceedings.

Respectfully submitted,


<u>/s/Jo Ann P. Myles</u>
Jo Ann P. Myles
Law Office of Jo Ann P. Myles
P.O. Box 6021
Suite 301
Largo, Maryland  20792
Bar No. 49855
301-773-9652 (office)
1-240-334-4848 (fax)
joamyl@aol.com
Counsel for Appellant

## <u>CERTIFICATE OF COMPLAINCE</u>

I certify that:

1.    This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because it contains 9,436 words, excluding the parts of the brief

exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

2.    This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

this brief has been prepared in a proportionally spaced typeface using

Microsoft Word 2010 in 14 point font size and Times New Roman type

style.

<u>/s/ Jo Ann P. Myles</u>
    Jo Ann P. Myles

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of  July 2015 a copy of the foregoing

Appellant Sandra Marshall's Brief was served upon the Appellees by

electronic filing to:

John B. Flood, Esq.
Ginger McCauley, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
1909 K Street, N.W. , Suite 1000
Washington, D.C. 20006

Sara E. Moffett Esq.
Megan Starace Ben' Ary, Esq.
LeClair Ryan a Professional Corporation
2318 Mill Road Suite 1100
Alexandria, Virginia 22314

Isais Alba IV, Esq.
Paul Mengel, Esq.
Piliero, Mazza & Pargament, PLLC
888 17th Street N.W. Suite 1100
Washington, D.C. 20006


<u>/s/ Jo Ann P. Myles</u>
     Jo Ann P. Myles